UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ANNASTACIA B. ALALADE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:09-CV-338-PPS |
| | ) | |
| AWS ASSISTANCE CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

AWS Assistance Corp. asks me to reconsider my ruling denying its motion for summary judgment on plaintiff Annastacia Alalade's sexual harassment claim. In particular, AWS contends that I was incorrect in holding that Alalade's prompt report to AWS about the single-instance harassment she suffered prevents AWS from satisfying the *Ellerth/Faragher* affirmative defense to that claim. For the reasons discussed below, the Court **DENIES** AWS's motion to reconsider.

## BACKGROUND

Alalade brought this action against AWS, her former employer, alleging Title VII claims for sexual harassment and retaliation, and a state law negligent retention claim [DE 23]. Her sexual harassment claim arises from a single severe incident of harassment: a sexual assault by her then supervisor, Samuel Ntawanda [*Id.*]. Alalade's claim is that Ntawanda's sexual assault against her was severe enough to alone create a hostile work environment for her [DE 33 at 7-8].

In its summary judgment motion, AWS argued that, because Ntawanda's conduct was an isolated event, it was not enough to establish a hostile work environment claim. The Court rejected this argument because actionable harassment need only be severe *or* pervasive, not both.

And the alleged conduct – a near rape – was easily severe enough to be actionable, notwithstanding that it was a one time incident.

AWS also argued that it should not be held liable for the acts of a rogue employee. Because Ntawanda was Alalade's supervisor and there was no tangible job action taken against her, AWS looked to the *Ellerth/Faragher* affirmative defense as the vehicle to avoid liability.[1] Under that test, where, as here, the plaintiff suffers no tangible employment action in connection with the alleged harassment by a supervisor, the defendant employer can avoid liability under the *Ellerth/Faragher* defense if it can show: (a) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

On summery judgment, AWS argued, and the Court agreed, that AWS's written anti-harassment policy, and prompt investigation of Alalade's report and subsequent termination of Ntawanda, showed that it exercised the requisite level of care to satisfy *Ellerth/Faragher*'s first prong.

As to the second prong, which is the subject of the pending motion, AWS argued that Alalade's four-day delay in reporting the assault showed that she unreasonably failed to take

---

[1] AWS does not dispute, either in the pending motion or its summary judgment papers, that Ntawanda was Alalade's supervisor within the meaning of Title VII. And Alalade has pointed to undisputed evidence that Ntawanda was authorized to discipline her [DE 33 at 5; DE 33-1 at 4-5]. Ntawanda's power to discipline Alalade establishes his supervisory status for purposes of evaluating Alalade's hostile work environment claim. *See Vance v. Ball State Univ.*, No. 08-3568, --- F.3d ----, 2011 WL 2162900, at *6 (7th Cir. Jun. 3, 2011) (Title VII supervisory authority "'primarily consists of the power to hire, fire, demote, promote, transfer, *or discipline* an employee'") (emphasis added) (quoting *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002)).

advantage of any preventive or corrective opportunities. Because a jury could readily conclude that Alalade acted reasonably in waiting just a few days before reporting the incident, I found that AWS failed to satisfy *Ellerth/Faragher*'s second prong. So I denied AWS's motion for summary judgment as to Alalade's hostile work environment claim.

In the pending motion, AWS contends – for the first time – that it is not required to satisfy *Ellerth/Faragher*'s second prong, despite the Supreme Court's clear directive that both prongs are necessary elements of the defense. Specifically, AWS argues that where, as here, the sexual harassment at issue is a single isolated incident, the employer is entitled to a modified *Ellerth/Faragher* defense, which drops the second prong's requirement that the plaintiff "unreasonably failed to take advantage" of corrective or preventative opportunities. Under this proposed modification, AWS's prompt and effective response to Alalade's complaint would suffice to avoid liability, notwithstanding AWS's inability to meet the second prong.

The Seventh Circuit has not addressed this issue. Other courts of appeals are divided. In particular, there is Eighth and Fifth Circuit authority for dropping *Ellerth/Faragher's* second prong under certain circumstances. The Tenth Circuit, however, has expressly declined to modify *Ellerth/Faragher* in this manner.

In the usual case, a party's attempt to introduce a new legal theory that it could have presented in its summary judgment papers will not justify the reconsideration of a previous ruling. *Caisse Nationale de Credit Agricole v. CBI Indus. Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Reconsideration is not an appropriate forum for . . . arguing matters that could have been heard during the pendency of the previous motion.") But a circuit split on a key issue in this case, which the Seventh Circuit has not addressed, presents a compelling reason for revisiting

my earlier ruling. So reconsideration is within my discretion under the law of the case doctrine. *See U.S. v. Harris,* 531 F.3d 507, 513 (7th Cir. 2008) (citing *Agostini v. Felton*, 521 U.S. 203, 236 (1997)); *Minch v. City of Chicago,* 486 F.3d 294, 301 (7th Cir. 2007); *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 572 (7th Cir. 2006).

## DISCUSSION

In *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the Supreme Court issued simultaneous opinions establishing the limits on an employer's vicarious liability under Title VII for hostile environment harassment perpetrated by a supervisor. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 780. Under the rule set forth in those cases, when no tangible employment action is taken against the employee plaintiff, the employer is entitled to assert an affirmative defense consisting of two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *see also Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004) (citing *Faragher*, 524 U.S. at 807 and *Ellerth*, 524 U.S. at 765).

*Faragher* and *Ellerth* made clear that this affirmative defense is firmly based on *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986), in which the Supreme Court first confronted the standards for determining employer liability for a hostile work environment created by a supervisory employee. *Faragher*, 524 U.S. at 792; *Ellerth*, 524 U.S. at 763.

*Meritor* involved a bank supervisor's sexual harassment of a subordinate over an extended period of time. The plaintiff in *Meritor* explained that she never reported this conduct,

4

or availed herself of the bank's reporting procedures, because she was afraid of the supervisor. The district court concluded that the defendant bank could not be held liable for the supervisor's actions because it was without notice of the harassing conduct. *Meritor*, 477 U.S. at 69. The court of appeals reversed, finding that an employer is strictly liable for a hostile environment created by a supervisor, even if the employer neither knew nor reasonably could have known about the harassing conduct. *Meritor*, 477 U.S. at 70.

*Meritor* disagreed, holding that the appellate court "was wrong to entirely disregard agency principles and impose absolute liability on employers for the acts of their supervisors, regardless of the circumstances of a particular case." *Meritor*, 477 U.S. at 73. *Meritor* reasoned that "Congress' decision to define 'employer' to include any 'agent' of an employer . . . surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible." *Id.* at 72 (internal citation omitted). Accordingly, *Meritor* found that "the Court of Appeals erred in concluding that employers are always automatically liable for sexual harassment by their supervisors." *Id.*

But *Meritor* refused to issue the "definitive rule on employer liability" that *Ellerth* and *Faragher* would later supply. *Id.* Instead, *Meritor* instructed courts to "look to traditional principles of the law of agency in devising standards of employer liability in those instances where liability for the actions of a supervisory employee was not otherwise obvious." *Faragher*, 524 U.S. at 791-92 (citing *Meritor*, 477 U.S. at 72).

This hazy guidance proved to be unsurprisingly inadequate. As *Faragher* observed, the courts of appeals struggled with *Meritor*'s instruction to use agency principles as guidance in determining employer liability for supervisor harassment claims. *Faragher*, 524 U.S. at 785.

5

The two-pronged *Ellerth/Faragher* defense is thus the Supreme Court's attempt to formulate a rule for carrying out *Meritor*'s holding that "an employer is not 'automatically' liable for harassment by a supervisor who creates the requisite degree of discrimination." *Faragher*, 524 U.S. at 804; *see also Ellerth*, 524 U.S. at 764-65.

For purposes of evaluating the pending motion, it is important to note that, like *Meritor*, *Ellerth* and *Faragher* dealt with multiple instances of supervisor harassment, which the plaintiff employee failed to report or complain about before filing suit. In *Faragher*, the plaintiff alleged that two supervisors sexually harassed her over the course of the five-year period that she worked for them. *Faragher*, 524 U.S. at 780-82. The plaintiff did not complain to management about either of these supervisors, despite that the defendant had adopted an anti-harassment policy. *Id.* The harassment at issue in *Ellerth* was also pervasive, involving a vice president's repeated inappropriate comments to a subordinate. *Ellerth*, 524 U.S. at 747-48. As in *Faragher*, Ellerth chose not to complain, despite her employer's anti-harassment policy. *Id.* at 748-49.

AWS argues that it should not be required to satisfy *Ellerth/Faragher*'s second prong because, unlike the harassment in *Meritor*, *Ellerth* and *Faragher*, Alalade was subjected to a single severe incident. But why should *Ellerth/Faragher* operate any differently in cases where the employer promptly and effectively responds to a single severe instance of harassment, as opposed to cases where the harassment consists of a pattern of incidents over time? After all, the Supreme Court held that the defense consists of "two necessary elements." *Ellerth*, 524 U.S. at 765. And nothing in *Ellerth* or *Faragher* suggests that single instance harassment cases are to be treated any differently. In many ways, this opinion could stop here. The Supreme Court has laid out a simple and easy to apply two-part test, and my job is to follow it.

6

But AWS responds that *Ellerth/Faragher* simply makes no sense in this context because requiring it to satisfy *Ellerth/Faragher*'s second prong will render it automatically liable for Ntawanda's conduct, even though AWS has done nothing wrong. On the contrary, it has done everything Title VII requires it to do from distributing an anti-harassment policy, to promptly and effectively responding to Alalade's complaint about harassment. This, AWS argues, would conflict with *Meritor*'s proscription against automatic employer liability for supervisor harassment.

This argument tracks the Eighth Circuit's rationale in *McCurdy v. Ark. State Police*, 375 F.3d 762 (8th Cir. 2004), for modifying the *Ellerth/Faragher* defense in single instance harassment cases. Thus, I turn now to an examination of *McCurdy*. Following that, I will examine *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258 (5th Cir. 1999), where the Fifth Circuit also applied a modified *Ellerth/Faragher* defense, and *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014 (10th Cir. 2001), in which the Tenth Circuit declined to do so.

**I.     The Circuit Split**

*McCurdy* held that *Ellerth/Faragher*'s second prong should not be applied in single instance harassment cases, and that an employer can avoid liability by meeting only the requirements of the first prong. *McCurdy*, 375 F.3d at 772. *McCurdy* involved what the court characterized as a single instance of supervisor harassment against an employee, which the defendant employer promptly investigated and corrected, following the plaintiff's prompt complaint. *Id.* at 771. The Eighth Circuit affirmed the district court's summary judgment in favor of the defendant under the *Ellerth/Faragher* defense, holding that "the Supreme Court, in crafting the *Ellerth/Faragher* affirmative defense, did not change course in sexual harassment

7

jurisprudence by holding employers strictly liable for single incidents of supervisor sexual harassment." *Id.* at 772.

*McCurdy* reasoned that "[t]o reach a conclusion that the affirmative defense is unavailable in single incident cases in which the employee takes advantage of preventative or corrective opportunities provided by the employer and the employer thereafter takes swift and effective action to avoid further offensive conduct stands the underlying policy behind the affirmative defense on its head." *Id.*

*McCurdy* further reasoned that "[d]enying such an employer an opportunity to avail itself of the affirmative defense, when the employer has done all that an employer could reasonably be expected to do to avoid and remedy the offending behavior, effectively creates strict liability for employers in a single incident case-contrary to the Supreme Court's holding in *Meritor*." *Id.* Moreover, *McCurdy* observed that "[t]o hold otherwise would make the promise of an affirmative defense in single incident cases not involving a tangible employment action illusory-the pragmatic result would be to hold . . . employers . . . strictly liable for all single incidents of supervisor harassment, while allowing other employers an affirmative defense for multiple and ongoing incidents of supervisor harassment." *Id*.

In dissent, Judge Melloy allowed that the Supreme Court may not have had single instance harassment in mind when it decided *Ellerth* and *Faragher*. And he noted that, in most cases, such incidents will not normally rise to the level of actionable harassment. *Id.* But Judge Melloy added that he "cannot read anything in *Ellerth/Faragher* that creates an exception to the two prong affirmative defense for those cases of single incident harassment that do rise to the level of actionable harassment." *Id.* Moreover, Judge Melloy joined three other Eighth Circuit

8

judges who would have granted the petition for rehearing en banc, which suggests that he may not be alone in disagreeing with the majority's reasoning.

In any event, *McCurdy*'s application of a modified *Ellerth/Faragher* defense is akin to the Fifth Circuit's decision in *Indest*, the other published circuit court case on which AWS rests its argument. The plaintiff employee in *Indest* had been sexually harassed by a company vice president, who made a series of crude sexual comments and gestures toward her over the course of a week-long trade show she was attending. *Indest*, 164 F.3d at 260. The employee promptly reported this behavior to her supervisor, and her employer promptly investigated the report and reprimanded the harasser. *Id.* at 260-61. The employee filed suit, alleging sexual harassment under Title VII, and the trial court granted summary judgment in favor of the employer. *Id.* at 260.

On appeal, a divided panel of the Fifth Circuit affirmed. *Indest* acknowledged that whether the plaintiff had been subjected to actionable harassment was a close call. *Id.* at 264. But the court reasoned that this was an issue it did not need to resolve, since the plaintiff had failed to establish a basis for employer liability. *Id*. In reaching this holding, *Indest* began by stating that *Ellerth* and *Faragher* did not control in a case where the plaintiff quickly resorts to the employer's anti-harassment procedures and the employer takes prompt remedial action:

> [*Ellerth* and *Faragher*] both involve complaints of longstanding supervisor misbehavior, and the plaintiffs either never utilized or claimed not to be aware of the company policies. But for purposes of imposing vicarious liability, a case presenting only an incipient hostile environment corrected by prompt remedial action should be distinct from a case in which a company was never called upon to react to a supervisor's protracted or extremely severe acts that created a hostile environment.

*Id.* at 265.

In finding that *Ellerth/Faragher* did not control, *Indest* reasoned that imposing vicarious

9

liability on the defendant employer, despite its swift and effective remedial response, would undermine Title VII's deterrent policy and *Meritor*'s holding that an employer is not automatically liable for harassment by a supervisor employee. *Id.* at 266. Thus, *Indest*, like *McCurdy*, ignored *Ellerth/Faragher*'s second prong, holding that the employer's prompt remedial response to the plaintiff's prompt complaint was enough to relieve it of vicarious liability under Title VII. *Id.* at 267.

*Indest* provides questionable support for AWS's position for a number of reasons. First, unlike this case, *Indest* did not involve a single instance of harassment, but rather a week-long series of inappropriate comments and gestures. AWS itself contends that cases involving repeated instances of harassment are inapplicable to the issue raised here [DE 46 at 3]. Indeed, following *McCurdy*, AWS argues that what justifies the modified defense it seeks is precisely the "single instance" nature of the harassment at issue here, which was not present in *Indest*. So in addition to being factually distinct from this case, *Indest* actually supports a much broader exception to *Ellerth/Faragher* than what AWS seeks here. I will return to this issue in the following section.

Second, *Indest* is not binding precedent, even in the Fifth Circuit. The authoring judge, Judge Jones, was not joined by the other members of the three-member panel that heard the case. The other two panel judges concurred in the judgment only. And Judge Wiener, writing in concurrence, expressly rejected Judge Jones's refusal to apply *Ellerth/Faragher*'s second prong. *See Indest v. Freeman Decorating, Inc.*, 168 F.3d 795, 796 (5th Cir. 1999) (*Indest II*) ("I cannot agree with Judge Jones's conclusion that the Supreme Court's remarkably straightforward and perfectly consistent twin opinions in [*Faragher* and *Ellerth*] do not control the present case -

10

and, indeed all cases in which the plaintiff seeks to hold his employer vicariously liable for a supervisor's sexual harassment.").

Third, the EEOC expressly rejected the reasoning in *Indest*. Courts frequently look to the EEOC Guidelines for guidance in resolving Title VII cases. *See Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 835 n.2 (7th Cir. 2005); *see also Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 n.7 (7th Cir. 1998). And, significantly, *Meritor*, *Faragher* and *Ellerth* all looked to the EEOC Guidelines in crafting the affirmative defense at issue here. *See Meritor*, 477 U.S. at 65 ("[EEOC] Guidelines, while not controlling upon courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.") (internal citations omitted); *see also Ellerth*, 524 U.S. at 764 (noting the relevance of the "EEOC's policy of encouraging the development of grievance procedures" to the *Ellerth/Faragher* defense); *Faragher*, 524 U.S. at 806.

Commenting on *Indest*, the EEOC expressly agreed with Judge Wiener's concurrence that *Indest* dismissed the plaintiff's claims on an erroneous basis:

> The Commission agrees with Judge Wiener that *Ellerth* and *Faragher* do control the analysis in such cases, and that an employee's prompt complaint to management forecloses the employer from proving the affirmative defense. However, as Judge Wiener pointed out, an employer's quick remedial action will often thwart the creation of an unlawful hostile environment, rendering any consideration of employer liability unnecessary.

EEOC Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors, No. 915.002, § IV.B n.46 (June 18, 1999).

Fourth—and here I arrive at the case that creates the other half of the circuit split—the Tenth Circuit in *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014 (10th Cir. 2001), expressly

11

rejected the modified *Ellerth/Faragher* defense applied in *Indest*. The plaintiff in *Harrison* brought a Title VII hostile work environment claim against her employer based on multiple instances of supervisor harassment, which took place over a two-month period. *Id.* at 1017. The sole issue at trial was whether the employer could avoid vicarious liability for its supervisor's misconduct by establishing its entitlement to the *Ellerth/Faragher* defense. *Id.* at 1024. At trial, the jury rejected the employer's assertion of the *Ellerth/Faragher* defense. *Id.* at 1020. On appeal, the employer relied on *Indest* in arguing that the district court erred in refusing to tender the following proposed jury instruction, which was based on *Indest*'s omission of *Ellerth/Faragher*'s second prong:

> You are instructed that if you find that Plaintiff . . . promptly complained of [her supervisor's] harassing conduct and that [the defendant employer] promptly responded, disciplined appropriately, and stopped the harassment, then you should find for [the defendant employer].

*Id.* at 1024.

*Harrison* found that the district court properly rejected the employer's proposed modification of the *Ellerth/Faragher* defense, stating that "there is no reason to believe that the 'remarkably straightforward' framework outlined in *Faragher* and [*Ellerth*] does not control all cases in which a plaintiff employee seeks to hold his or her employer vicariously liable for a supervisor's sexual harassment." *Id.* at 1026.

Like *Indest*, *Harrison* is not squarely on point here. It lacks the single-instance conduct that AWS, following *McCurdy*, argues requires the application of a modified *Ellerth/Faragher* defense. Nonetheless, *Harrison*'s finding that *Ellerth/Faragher* controls *all* cases where a plaintiff seeks to hold her employer vicariously liable for a supervisor's conduct clearly extends

12

to single-incident cases. *Cf. Chapman v. Carmike Cinemas*, 307 Fed. Appx. 164, 170 (10th Cir. 2009) (rejecting *McCurdy*'s modification of *Ellerth/Faragher* in single-incident offense).

## II.     Evaluation of AWS's Argument for Modification

AWS's argument for dropping *Ellerth/Faragher*'s second prong in single instance harassment cases—and *McCurdy*'s rationale for doing so—certainly appears to resonate with some of the considerations underpinning the Supreme Court's rationale for limiting employer liability in cases involving sexual harassment by a supervisor employee. For example, in *Ellerth*, the Supreme Court acknowledged that "Title VII is designed to encourage the creation of antiharassment policies and effective grievance mechanisms." *Ellerth*, 524 U.S. at 764. This is precisely what *Ellerth/Faragher*'s first prong requires the employer to do, and precisely what AWS did here. Indeed, its grievance mechanisms were effective enough that Alalade felt comfortable promptly availing herself of them. But if AWS has done everything *Ellerth/Faragher* and Title VII require it to do, why shouldn't it be entitled to the benefit of the affirmative defense?

It is important to note here that this rhetorical question has the same degree of intuitive force in cases of pervasive patterns of harassment as it does in the context of a single-instance case. Of course, in a case where the harassment is protracted enough to create an actionable pattern of misconduct, it would be unsurprising to find that the plaintiff had failed to promptly complain about it. *Cf. Roby v. CWI, Inc.*, 579 F.3d 779, 786 (7th Cir.2009) (plaintiff waited five months before reporting pattern of harassment); *Jackson v. County of Racine*, 474 F.3d 493, 502 (7th Cir. 2007) (four months); *Gawley v. Indiana Univ.*, 276 F.3d 301, 312 (7th Cir. 2001) (seven months); *Hill v. Am. Gen. Fin., Inc.*, 218 F.3d 639, 643 (7th Cir. 2000) (six months); *Mink v.*

13

*Barth Elec. Co., Inc.*, 685 F. Supp. 2d 914, 933 (S.D. Ind. 2010) (two years).

But there are also pervasive pattern cases where the employer's anti-harassment policy and prompt, effective response satisfies *Ellerth/Faragher*'s first prong, yet the plaintiff's quick action prevents the employer from satisfying *Ellerth/Faragher*'s second prong, depriving it of an affirmative defense. *See Fuller v. Fiber Glass Sys., LP,* 618 F.3d 858, 864-65 (8th Cir. 2010) (affirming finding that employer satisfied *Ellerth/Faragher*'s first prong, but not the second); *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1057 (9th Cir. 2007) (plaintiff's prompt report of harassment taking place "[o]ver the course of several months" prevented employer from satisfying *Ellerth/Faragher*'s second prong, despite that employer satisfied the first prong); *see also Reed v. MBNA Mktg. Sys., Inc.*, 333 F.3d 27, 35-7 (1st Cir. 2003) (defendant's prompt response satisfied *Ellerth/Faragher*'s first prong in pattern of harassment case, but fact dispute remained as to whether it could meet second prong); *Hardy v. Univ. of Ill. at Chicago*, 328 F.3d 361, 365 (7th Cir. 2001) (same); *Johnson v. West*, 218 F.3d 725, 731-32 (7th Cir. 2000) (same).

The employer defendants in these "pattern of harassment" cases arguably have done everything that Title VII and *Ellerth/Faragher* are meant to encourage. They had anti-harassment polices in place and responded promptly and effectively to reports of sexual harassment. So by the logic urged by AWS, those employers ought to also avoid liability, based solely on their satisfaction of *Ellerth/Faragher*'s first prong.

One problem with this logic is that it creates an exception that swallows the *Ellerth/Faragher* rule. That is, AWS is asking the Court to modify *Ellerth/Faragher*, as *McCurdy* did, on the ground that this is a single instance harassment case, to which *Ellerth/Faragher*'s second prong is supposedly inapplicable. Yet the rationale for the proposed

modification—that the employer has done everything required of it—applies just as easily to pattern of harassment cases. Indeed, *Indest* applied a modified *Ellerth/Faragher* defense to conduct that "was neither severe nor pervasive," but rather what the court described cryptically as "an incipient hostile environment." *Indest*, 164 F.3d at 264-5. Thus, rather than carving out a narrow class of cases—single instance harassment cases—for which a modified *Ellerth/Faragher* should be applied, the reasoning endorsed by AWS actually supports dropping the second prong altogether whenever the employer satisfies the first prong. This would eviscerate rather than merely modify the rule.

Moreover, I am unconvinced by AWS's reliance on *Meritor* as a basis for modifying *Ellerth/Faragher*. AWS, relying on *McCurdy*, argues that a refusal to modify *Ellerth/Faragher* in a single-instance harassment case would conflict with *Meritor*'s holding that an employer is not always automatically liable for harassment by a supervisor [DE 41 at 11]. But I fail to see the conflict. *Meritor* held that the lower court "was wrong to entirely disregard agency principles and impose absolute liability on employers for the acts of their supervisors, regardless of the circumstances of the particular case." *Meritor*, 477 U.S. at 73. The availability of the *Ellerth/Faragher* defense—in single-instance and pervasive pattern harassment cases alike—insures that AWS's liability for Ntawanda's conduct is not automatic. Nothing about that fact that AWS still must satisfy both prongs to avoid liability conflicts with *Meritor*.

To be sure, it may seem odd that an employer's ability to avoid liability under *Ellerth/Faragher* depends in part on what the plaintiff employee does or doesn't do. This accounts for the intuitive appeal of *McCurdy*'s statement that a liability finding for an employer that takes swift and effective action "stands the underlying policy behind the affirmative defense

15

on its head." *McCurdy*, 375 F.3d at 772. But *McCurdy* and AWS fail to consider that the policy basis for *Ellerth/Faragher* is not limited to incentivizing employers to develop effective anti-harassment policies and grievance mechanisms. *Ellerth/Faragher* is also designed to incentivize employees in a way that delivers on Title VII's "primary objective," which is "not to provide redress but to avoid harm." *Faragher*, 524 U.S. at 806 (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417 (1975)).

Indeed, *Ellerth* observed that the considerations relevant to determining the scope of employer liability for a supervisor's harassment include Title VII's deterrent purpose of "encourag[ing] employees to report harassing conduct before it becomes severe or pervasive." *Ellerth*, 524 U.S. at 764. Likewise, *Faragher* observed that the purpose behind the second prong is to incentivize employees to mitigate their damages by promptly reporting harassment:

> The requirement to show that the employee has failed in a coordinate duty to avoid or mitigate harm reflects an equally obvious policy imported from the general theory of damages, that a victim has a duty "to use such means as are reasonable under the circumstances to avoid or minimize the damages" that result from violations of the statute. . . . If the plaintiff unreasonably failed to avail herself of the employer's preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so. If the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, and if damages could reasonably have been mitigated no award against a liable employer should reward a plaintiff for what her own efforts could have avoided.

*Faragher*, 524 U.S. at 806-07.

By focusing only on what *Ellerth/Faragher* is designed to encourage employers to do, *McCurdy* and AWS ignore the policy concerns that animate *Ellerth/Faragher*'s second prong, which concern the plaintiff's duty to mitigate her damages.

Granted, in a case of single-instance harassment, the plaintiff may have less opportunity

16

to mitigate her damages than she does in a case where the harassment comes in the form of a protracted pattern of misconduct. But Title VII's policy of encouraging employees to report harassing conduct—and thus *Ellerth/Faragher*'s second prong—is still just as pertinent in such cases. After all, had Alalade not promptly reported Ntawanda, the harm to her may well have increased through continued harassment.

Policy considerations aside, at bottom, the Supreme Court did not see fit to carve off single-instance harassment cases for special treatment under *Ellerth/Faragher*. So even if I were convinced that *Ellerth/Faragher*'s second prong should not apply to single-instance harassment cases, that would not permit me to modify the defense here. *Gacy v. Welborn*, 994 F.2d 305, 310 (7th Cir. 1993) ("Ours is a hierarchical judiciary, and judges of inferior courts must carry out decisions they believe mistaken."); *see also Heath v. Varity Corp.*, 71 F.3d 256, 257 (7th Cir. 1995 (collecting cases). That's for someone above my paygrade to do. Accordingly, I decline to modify *Ellerth/Faragher*'s two-pronged framework to the single-instance harassment at issue here.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant AWS's motion to reconsider [DE 40]. In addition, AWS also moved to strike [DE 47] the affidavits that Alalade submitted with her brief in opposition to the motion to reconsider. I have not relied on those affidavits in arriving at my decision, so that motion is **DENIED AS MOOT**.

**SO ORDERED**.

ENTERED: June 22, 2011

                                               s/ Philip P. Simon
                                               PHILIP P. SIMON, CHIEF JUDGE

UNITED STATES DISTRICT COURT